Charles A. **FOSTER**, Appellant,

v.

Sherrie L. **FOSTER**, Appellee.

No. 7209.

Supreme Court of Alaska.

July 20, 1984.

Jean S. Schanen, Schanen Law Firm, Inc., Wasilla, for appellant.

Richard B. Brown, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal is taken from the superior court's grant of a Civil Rule 60(b) motion. In granting the motion, the court modified certain provisions of a decree it had previously entered relating to the division of the parties' real property. We hold that the superior court did not abuse its discretion in granting the Rule 60(b) motion.[1]

The marriage of Charles and Sherrie Foster was terminated by dissolution upon their joint petition. The original petition for dissolution provided, as to the parties' residence, that:

> The Husband agrees to give 50% of the profits of the equity on the house and or property upon the sale of Blk 2 lot 16 of Wasilla Woods Subdv., or any portion of

---

1. *Alaska Placer Company v. Lee*, 502 P.2d 128, 132 (Alaska 1972); *Gravel v. Alaskan Village, Inc.*, 423 P.2d 273, 277 (Alaska 1967).

the property or house. The husband agrees to give 50% of the profits on the sale of the property in Edgewood Estates at the time of the sale of said property. The house shall be sold at the option of the husband.

Thereafter, but prior to the entry of the decree, the parties amended their petition for dissolution to add the following language to the above-quoted provision of the petition:

> with Sherrie L. Foster's consent and at fair market value as determined by a fee appraiser approved by both parties. Should S.L. Foster deny consent for sale of above mention [sic] property, then S.L. Foster shall by [sic] out Charles A. Foster's equity at fair market value.[2]

On August 15, 1980, on the basis of the petition, the superior court granted a decree of dissolution. Thereafter, in June 1982, Sherrie Foster moved pursuant to Civil Rule 60(b) to modify the decree as it pertained to the parties' marital residence. More specifically, Sherrie requested that the decree be modified to provide that Charles either pay her one-half the value of the equity in the property in exchange for a conveyance of her one-half interest in the property, or that Charles sell the property and divide the net proceeds equally with her.[3]

The basis of Sherrie's motion for this modification was that there had been a significant change in circumstances since she and Charles had petitioned for dissolution of their marriage. In an affidavit filed in support of her motion Sherrie articulated the assumption she had made when she approved the dissolution petition:

[O]ur dissolution petition was drawn up (by Chuck) under the assumption that we would continue living together with our children as a family unit after the marriage ended. I signed the petition under this assumption. Since we planned to continue living together in our former marital residence in the Wasilla Woods Subdivision we decided to treat the property in the same way we had treated it during our marriage. This meant that we would co-own the land and house and each have an equal right to the equity from any sale.[4]

Although the parties did, after the entry of the decree, live together with their children in the Wasilla Woods residence, as time went on Sherrie found the situation unworkable. Disputes arose over rights of access and other decisions relating to the parties' residence. Sherrie located a residence of her own and thereafter filed a Civil Rule 60(b) motion to modify the dissolution decree as it related to the Wasilla Woods house. After a hearing the superior court entered an order which provided in part that Charles was to pay Sherrie

> one-half of the equity in the marital residence by September 1, 1982 or the residence shall be listed for sale with a licensed real estate broker at a price agreed upon by the parties or set by the court with the net proceeds to be divided equally.

■ As was indicated at the outset, our review of the record in this case leads us to the conclusion that the trial court did not abuse its discretion in granting Sherrie's Civil Rule 60(b) motion to modify. Although the motion was based on subsection

**2.** Neither party to this appeal was represented by counsel when they drafted and agreed upon the petition for dissolution and amendments thereto.

**3.** In response to Charles' objections, Sherrie stated she was willing to have her interest valued according to the property's worth as of the date of the decree of dissolution. Sherrie further stated that if Charles chose to purchase her interest, she was willing to accept installment payments upon adequate security and interest.

**4.** Sherrie also averred that:

> Though we were experiencing marital difficulties prior to filing the dissolution petition I was not ready to terminate the marriage. Chuck convinced me, however, that a dissolution would really save our relationship because it would allow us to start all over again. He wanted us to continue living together after the dissolution.... I went along with this reasoning because Chuck was certain that it would save our relationship.

(5) of Civil Rule 60(b)[5] we hold that the superior court's decision is sustainable under Civil Rule 60(b)(6).[6] Here the record demonstrates an extraordinary circumstance which is not covered by any of the provisions contained in Civil Rule 60(b)(1) through (5).[7] It is clear that the fundamental assumption which formed the basis for the parties' dissolution agreement was that Sherrie and Charles would continue to live together in their residence and that they eventually would remarry. Given the fact that the parties' poorly thought out property division was reached without the benefit of counsel, and the fact that the marital residence was their principal asset,[8] we hold that the destruction of the underlying assumption made it inequitable that Sherrie not be given the relief she sought. Thus, we cannot conclude that the superior court abused its discretion in modifying the property disposition provisions of the decree, which essentially gave Charles sole discretion to decide whether and when the property would be sold.

■ On the other hand, we think the superior court's order should be modified in the following respects. First, Sherrie's interest in the marital residence should be evaluated as of the date of the dissolution decree.[9] Second, Charles should be given the option of either selling the residence to a third party or purchasing Sherrie's interest through installment payments, with adequate security and interest to Sherrie.

AFFIRMED in part, MODIFIED in part, and REMANDED to the superior court for the purpose of conducting such further proceedings as are necessary to carry out the modifications in the superior court's decree required under this opinion.[10]

COMPTON, Justice, dissenting.

At the outset, it must be noted that the trial court made *no* findings of fact, despite the existence of affidavits and arguments which raise factual questions. Before the trial court exercises its discretion, I think it only reasonable to first determine what the facts are.

This court remarks that

It is clear that the fundamental assumption which formed the basis for the parties' dissolution agreement was that Sherrie and Charles would continue to

---

**5.** Civil Rule 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . .

**6.** Civil Rule 60(b)(6) provides that a party may be relieved from a final judgment for "any reason justifying relief from the operation of the judgment."

In affirming the superior court in this case, we invoke again "the settled rule that a trial court's actions may be affirmed when an alternative ground, not necessarily relied upon by the trial court, appears in the record." *Northern Lights Motel, Inc. v. Sweaney,* 563 P.2d 256, 257 (Alaska 1977). *See also Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961) ("[I]t is a rule of law that an appellee may urge, and the appellate court should consider in defense of a decree or judgment any matter appearing in the record . . .").

**7.** See *O'Link v. O'Link,* 632 P.2d 225, 229 (Alaska 1981).

**8.** Sherrie and Charles had been married for almost twelve years when the decree of dissolution was entered. Their property at the time of the dissolution consisted of the house, a pick-up, two cars, two small motorcycles, a canoe and an outboard motor. The total value of that property was approximately $107,600.00. While the record does not reflect the appraised value of the house itself, at the time of dissolution over $56,000.00 was still owing on mortgages secured by the house, garage, and lot. Aside from his 50% interest in the house, Charles also received all of the property listed above except for one car and one motorcycle.

**9.** Sherrie requested this modification in her brief on appeal.

**10.** More particularly, the superior court should set a reasonable time for Charles to decide which option he will pursue. Sherrie's interest must be evaluated as of the date of the dissolution decree. Further, if Charles decides to purchase Sherrie's interest, the court should set the terms of such purchase, including installments, interest, and security.

live together in their residence and that they eventually would remarry. Given the fact that the parties' poorly thought out property division was reached without the benefit of counsel, and the fact that the marital residence was their principal asset [footnote omitted], we hold that the destruction of the underlying assumption made it inequitable that Sherrie not be given the relief she sought.

684 P.2d at 872. This paragraph is replete with factual matter, which this court apparently feels comfortable "finding" just as if it were a trial court.

The evidence is not so clear, however. Despite the material quoted from Sherrie's affidavit, apparently she was not living with Charles when the amendment to the petition for dissolution was executed, and clearly was not living with him when the dissolution was granted. I fail to understand how Sherrie could "continue living together with our children as a family unit after the marriage ended," since she was not so doing at the time of and for a couple of months prior to its dissolution. Not quoted from her affidavit is her response to a question from the Master at the dissolution hearing, in regard to the possibility of a reconciliation:

I was skeptical that his plan would work. I did not make any effort to conceal our intentions from the court and during the hearing on the petition when the Master asked me if I thought there might be a reconciliation I replied 'I can't answer that question. I would have to say at this point no.'

This court remarks that Sherrie found the situation "unworkable." When she moved out of the house for the last time, in November or December, 1981, the situation probably was unworkable, and understandably so, since she had been married to another man since June, 1981. At first blush I would think that might have had some effect on the possibility of a reconciliation. Apparently her last return to the

former family residence was, to begin with, a matter of convenience until she could find a place of her own in Anchorage, although extreme ambivalence about who she wanted to live with might be a plausible inference.

This sketch of the evidence is not made to show what the facts are, but rather to show that we should be told what they are. Certainly it cannot be said by this court that any "fundamental assumption" failed. The evidence does not conclusively so demonstrate.

If we assume that an assumption did fail, I still do not view this case as within the ambit of Civil Rule 60(b)(6).[1]

In *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981), we noted that relief under Rule 60(b)(6) is reserved for extraordinary circumstances. We quoted with approval the following from 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864, at 213–214 (1973) (footnote omitted):

In general, relief is given under clause (6) in cases in which the judgment was obtained by the improper conduct of the party in whose favor it was rendered or the judgment resulted from the excusable default of the party against whom it was directed under circumstances going beyond the earlier clauses of the rule....

. . . .

The broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests.

Applying this purpose to the apparent "facts" of the case at bar, no claim is made that Charles obtained the judgment through improper conduct. The judgment was not a default judgment, but rather in the nature of a consent judgment. Both parties signed the dissolution petition and amendment thereto. Charles signed a form Appearance and Waiver, and Sherrie appeared at the hearing before the Master.

---

**1.** Counsel for Sherrie does not either. He repeatedly asserts that his motion is pursuant to

Civil Rule 60(b)(5), not any other subsection of Rule 60(b), including Rule 60(b)(6). I agree.

Whether a "fundamental assumption" failed or not, Sherrie does not claim she did not make a deliberate choice. Indeed, her affidavit would seem to make it clear that her choice was very deliberate.

Sherrie's modification motion was filed 22 months after the decree of dissolution was entered, a year after she remarried, and six to eight months after she last lived in the former family residence. The motion seeks to modify a specific aspect of the property distribution and rights of the parties. The rule respecting the finality of judgments ought be enforced in cases such as this, where parties have so long conducted their affairs under terms of agreements voluntarily entered into. This is no exceptional case. It is bad law.

If the case must be decided on the record before us, I would conclude that the trial court abused its discretion in granting Sherrie any relief. The correct resolution of the case, however, is to remand for a determination of the facts.

