David L. SCHOFIELD, Appellant,

v.

Karen A. SCHOFIELD, Appellee.

No. S–2768.

Supreme Court of Alaska.

July 7, 1989.

Rehearing Denied Aug. 24, 1989.

---

William T. Ford, Anchorage, for appellant.

Ramona Longacre, Anchorage, for appellee.

Before MATTHEWS, C.J., RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION AND ISSUES ON APPEAL.

This appeal is from a judgment modifying a property distribution in a dissolution decree. The single point on appeal is whether the superior court erred in modifying the dissolution decree and awarding Karen Schofield a one-half interest in the marital residence.

### II. STATEMENT OF THE FACTS.

Appellant David L. Schofield and appellee Karen A. Schofield were married in 1968. Their two children were born in 1973 and 1975. On February 10, 1978, Karen and David filed a petition for dissolution without benefit of any counsel. Karen signed an appearance and waiver. The petition provided that David would have custody of the children and required no child support payments from Karen. The petition also made no provision for spousal support payments. The parties provided that David would retain his automobile and motorcycle ($9,000 in value), as well as $9,000 in consumer debts. Karen would retain her car ($3,000 in value). The parties also agreed that David would receive the jointly-held marital home ($73,000 value less $33,080.52 mortgage), together with the household furnishings ($3,000 less $800 owed). Thus, it appears that David received $42,119.48 [1] and Karen received $3,000.[2]

At the 1978 dissolution hearing, the divorce master questioned David about the petition's child support and property division provisions:

Q Now, with regard to child support you've indicated in the petition that your wife should not pay any amount of child support to you on a regular basis. Do you feel that you're able to adequately support the children solely on your own income?

A I do.

---

**1.** This figure represents $39,919.48 of equity in the house plus $2,200 in household furnishings. At the 1987 hearing, David testified that the amount of equity in the house at the time of dissolution was only approximately $12,000. However, he also testified that the house was only worth "about $45,000" in 1978, substantially less than the $73,000 figure on the dissolution petition.

**2.** At the 1987 hearing, David testified that the dissolution petition had not disclosed several marital assets, to-wit: a motorhome, a motorcycle, and David's retirement account with the State of Alaska.

Q And do you believe it's reasonable that there not be any order of support from your wife?

A I think it's reasonable that she should not have to pay support.

Q Okay. Now, with regard to division of the property you've indicated in the petition that you will be awarded the home and the household furnishings and the liabilities thereon. There's no other property distribution indicated in here. First of all, does this home—is this—is there equity in this home that you and your wife have acquired over the course of your marriage?

A Certainly, yes.

Q What has led you to the decision that you will retain the home or you will have the home solely and no amount of equity is—or no cash or any other type of recovery is given to your wife here?

A Mainly based on the fact that I have custody of the kids.

Q Okay. This was as a means of perhaps making up her supporting role in their upbringing or something of this nature?

A Well, to help financially.

Q Uh-huh. Do you believe that it's a fair and reasonable agreement?

A I believe so, yes.

Q And do you believe that your wife also feels that way?

A I do.

Q Were there any other items of property of any consequence to be divided between you?

A Nothing more than, you know, your household furnishings, and that's it.

Q No other properties or....

A We have none. The automobile is her own, anyway.

The superior court signed a decree of dissolution incorporating the provisions of the petition on March 15, 1978.

Neither the deed to the house nor the mortgage was ever changed to reflect the dissolution. Thus, the real property remained titled in the names of both Karen and David.

Approximately a year and a half after the dissolution, in August or September 1979, Karen moved back into the house. Karen and David commingled their income and expenses and lived together until about January 1, 1983, when David moved out. The children remained in the house with Karen. David assisted with the mortgage payments until July of 1983. He gave her some additional money just prior to moving to California in September of 1983. Karen then made the mortgage payments and supported the children by herself through the June 1987 superior court hearing in this case.

In April 1984, David and Karen filed two requests in the superior court to modify the dissolution decree. The first asked that custody of the children be transferred from David to Karen because "[f]ather is relocating to California." The second stated:

The petitioners request that their Decree of Dissolution be changed as follows:

Karen Schofield awarded Residency of joint owned real property to allow minor children, Paul and Anthony, to continue schooling in the same neighborhood. Karen will maintain mortgage payments, home insurance, and taxes.

The reason for this requested change is: Karen Schofield will have custody of children in Alaska—Father is living in California.

In response, the divorce master wrote a letter in May 1984 to Karen and David explaining that the child custody request could not be considered until the child custody investigator "sees or talks to you and the children." The master also advised them that they would have to file a child support modification form. With regard to the Schofields' request regarding the home, the master wrote:

In regards to your Request to Modify as to Ms. Schofield receiving the real property, the court is without jurisdiction to consider it, as once a divorce or dissolution of marriage is granted all property issues, which are dealt with, are permanently resolved and not subject to modifi-

cation under the divorce statutes. Both of you should seek the advice of legal counsel as to the property issue, because Mr. Schofield received the house under the Decree of Dissolution and that is regarded as a final award.

In December 1984, the master wrote a second letter to the Schofields, stating:

The court has not received another Request to Modify form, which I required in my May 10, 1984 letter to you. Since Custody Investigator Ardis Cry has recommended approval of your custody change request, the court can grant the request as soon as you specify how much child support Mr. Schofield will pay each month for each child. As I previously noted anything less than $150.00 per month per child is regarded usually as too little. Please submit the properly completed form as soon as possible.

In July 1985, the superior court denied their request to modify custody because the Schofields had not filed the required child support amendment.

In May 1986, Karen, through counsel, filed a motion to modify the dissolution decree, requesting custody of the children, child support, and an award of the marital home. David, also through counsel, filed a partial opposition to Karen's motion. Although he did not object to joint legal custody or to paying "a reasonable amount of child support," he did object to Karen's request that the court award her the house. He requested a clerk's deed for the house.

A hearing on the motion was held before a divorce master. The parties stipulated that Karen would be awarded legal custody of the children. The master concluded with regard to the home that any request for relief under Rule 60(b) would be untimely. However, the master further explained, "assum[ing] that the earlier decision to deny the parties' request to modify was erroneous, then the present issue becomes not one of modification but the appropriateness of enforcing the parties' agreement." The master recommended that the modification agreement be enforced in equity.

After holding a hearing, the superior court found the house to be "jointly owned." In so ruling, the superior court stated in its oral opinion the following:

It's the Court's ruling that there was ... appropriate evidence to cause the Court to modify the decree regarding ... possession and ownership of the residence. And the Court thinks it appropriate that the Court recognize the extra-judicial modification agreement. And that the Court does not view that agreement the way that I guess that the ... petitioner David Schofield did, as being limited.

... The language of the requested modification, which was not addressed by the Court back in 1984, was an intent to award residency of joint-owned real property to allow minor children to continue in schooling, with Karen to maintain the mortgage payments, home insurance, and taxes.

... [T]he question that I think was before the Court was whether that was intended to be simply the statement of ... some kind of a leasing arrangement, in that it talks about awarding residency, or whether it was intended to change the ownership relationship that had been created by the earlier dissolution, thereby invoking the joint-owned real property description within that phrase. And it seems to me that that was the intention. It was a recognition of the act of jointly owning the property. And that's not simply because it was in title at that time jointly, but that there was an intention that it be so.

Thereafter, the superior court entered findings of fact, conclusions of law, and an order modifying the original dissolution decree to the effect that "the marital residence is jointly owned by the parties." The superior court further ordered that the house be listed for sale "due to the parties' failure to agree on how to effect their interest." More specifically, the superior court found that:

1. The original dissolution decree awarded the marital residence to David Schofield based on the assumption that he would care for and raise the children.

....

6. There has been a failure of the underlying assumption of the original dissolution decree in 1978 regarding the distribution of the marital residence.

In its conclusions of law the superior court wrote in part as follows:

1. That the facts indicate that there has been a failure of a fundamental assumption of the original dissolution agreement which is extraordinary enough to justify modification of the decree.

2. That it would be inequitable to enforce the original decree in light of the destruction of the underlying assumptions which created the basis of the original property distribution.

3. That as a result of the events that actually occurred after the dissolution decree was entered, this court hereby finds that the marital residence is jointly owned by the parties, with each party having a one-half interest therein, and the original decree is so modified.

## III. DISCUSSION.

In *Burrell v. Burrell*, 696 P.2d 157 (Alaska 1984), we stated that "there is no statutory authority for a court to modify the terms of a property settlement. The law is clear that 'the provisions of a decree adjudicating property rights are modifiable only to the extent that relief may be obtained from any other final judgment.'" *Id.* at 164 (citations omitted).

▮ The only case in which this court has modified a property division in a divorce or dissolution decree pursuant to Rule 60(b) is *Foster v. Foster*, 684 P.2d 869 (Alaska 1984). In that case, twenty-two months after the superior court had granted a decree of dissolution, Sherrie Foster "moved pursuant to Civil Rule 60(b) to modify the decree as it pertained to the parties' marital residence." *Id.* at 871. The dissolution decree had given each spouse a one-half interest in the house, but made no provision whereby Sherrie could redeem her interest without Charles' consent. *Id.* at 870–71. Neither Sherrie nor Charles had been "represented by counsel when they drafted and agreed upon the petition for dissolution." *Id.* at 871 n. 2.

"The basis of Sherrie's motion was that there had been a significant change in circumstances since she and Charles had petitioned for dissolution of their marriage." *Id.* at 871. The petition had been drawn up under the assumption that Sherrie and Charles "would continue living together as a family unit after the marriage ended." Sherrie found this situation unworkable "as time went on." She eventually moved out of the marital residence and filed a Rule 60(b) motion to modify. *Id.* The superior court granted Sherrie's motion under subsection (5) of Rule 60(b).[3] Specifically, the court ordered that Charles pay Sherrie her share of the equity in the house, or list the house for sale "with the net proceeds to be divided equally." *Id.* This court affirmed the superior court on the alternative ground of subsection (6) of the rule:[4]

Here the record demonstrates an extraordinary circumstance which is not covered by any of the provisions contained in Civil Rule 60(b)(1) through (5). It is clear that the fundamental assumption which formed the basis for the parties' dissolution agreement was that Sherrie and Charles would continue to live together in their residence and that they eventually would remarry. Given the fact that the parties' poorly thought out property division was reached without the benefit of counsel, and the fact that the marital residence was their principal asset, we hold that the destruction of the underlying assumption made it

---

3. Civil Rule 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated or it is no longer equitable that the judgment should have prospective application; . . .

4. Civil Rule 60(b)(6) provides that a party may be relieved from a final judgment for "any other reason justifying relief from the operation of the judgment."

inequitable that Sherrie not be given the relief she sought. Thus, we cannot conclude that the superior court abused its discretion in modifying the property disposition provisions of the decree, which essentially gave Charles sole discretion to decide whether and when the property would be sold.

*Id.* at 872 (footnotes omitted).

Study of the superior court's written findings of fact and conclusions of law shows that they essentially echo the language in *Foster.*[5]

We are in agreement with Karen's argument that the four factors which this court relied on in *Foster* are all present in the instant case. These are: (1) the fundamental, underlying assumption of the dissolution agreement had been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the marital residence was the parties' principal asset. Consequently, we conclude that it was not an abuse of discretion for the superior court to modify the dissolution decree to award Karen a one-half interest in the marital residence.[6]

■ Civil Rule 60 provides that a motion made pursuant to subsection (b)(6) shall be made within a reasonable time. Given the factual circumstances of this case, we conclude that Karen's Civil Rule 60(b) motion was made within a reasonable time. Here the relevant points for purposes of determining reasonableness are the (1) time between the dissolution decree (1978), and David and Karen's first (April 1984) motion to modify (six years), or (2) the length of time between Karen's assumption of the mortgage payments and the support of the children (September 1983) and either the April 1984 (nine months) or May 1986 (two years, ten months) requests for modification of the dissolution decree.

AFFIRMED.

---

**5.** Comparison of the superior court's written findings of fact and conclusions of law with its oral opinion demonstrates that the superior court employed differing legal rationales in reaching its holding that Karen is entitled to a half interest in the parties' home. In its oral decision the superior court's approach was to give effect to the parties' intent as reflected in the terms of their 1984 modification motion agreement. In its subsequently entered written findings of fact and conclusions of law the superior court analyzed the merits under a Civil Rule 60(b)(6) approach in which it explicitly applied the *Foster* factors.

In *K.T.E. v. State,* 689 P.2d 472 (Alaska 1984), we stated: "Generally, where inconsistencies exist between a court's written findings and its oral statements, the written findings control." *Id.* at 477. Given the above-mentioned inconsistencies between the superior court's oral decision and its written findings and conclusions, the latter control. Thus, our review is limited to the superior court's written findings of fact and conclusions of law.

**6.** In *Mendoza v. Mendoza,* 103 N.M. 327, 706 P.2d 869 (App.1985), the Court of Appeals of New Mexico held that a modification of property rights in a divorce decree under that state's version of Rule 60(b)(6) required "the existence of 'exceptional circumstances.' *Dyer v. Pacheco,* 98 N.M. 670, 651 P.2d 1314 (Ct.App.1982). Exceptional circumstances means facts or things out of the ordinary bearing upon a central fact. *Id.*" 706 P.2d at 874. The New Mexico rule, like ours, allows for Rule 60(b) motions to be filed within a "reasonable time." *Id.* at 873.