Tommy R. LOWE, Appellant,

v.

Linda R. LOWE, Appellee.

No. S–3869.

Supreme Court of Alaska.

July 26, 1991.

J. Mitchell Joyner, Anchorage, for appellant.

Charlene A. Lichtmann, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

Tommy R. Lowe and Linda R. Lowe obtained a Decree of Dissolution of Marriage from the superior court on September 19, 1984. On May 26, 1989, over four and a half years later, Linda filed a motion for relief from judgment pursuant to Alaska Rule of Civil Procedure 60(b). She asked the superior court to set aside the property division which was incorporated into the dissolution decree and to award her a share of Tommy's military retirement benefits. The superior court amended the decree and awarded Linda one-half of Tommy's entitlement to military retirement benefits. that had accrued during the marriage. The court also ordered Tommy to pay Linda $359.60 per month in child support and awarded Linda costs and attorney's fees. We remand for a determination of whether Linda's Rule 60(b) motion was brought within a reasonable time.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Linda and Tommy were married on November 6, 1965, and lived together until after the dissolution of their marriage on September 19, 1984. They have two children: Tony, born August 8, 1969; and Tiffany, born November 11, 1974.

Linda and Tommy filed a Petition for Dissolution of Marriage, signed by both of them, on August 2, 1984. At the time they signed the petition, Tommy was unemployed and receiving military retirement and disability benefits of $728 a month, entitlement to most of which had accrued during the marriage. Linda had a full-time job which netted $1,186 per month, with no retirement benefits. They owned a house in Abilene, Texas, the value of which they

disputed.[1] Tommy and his two brothers were partners in several oil leases, the values of which they also disputed.[2] Linda and Tommy also owned a car and some household furnishings.

Prior to petitioning for dissolution, Tommy sought legal advice from the Judge Advocate General's (JAG) office on Elmendorf Air Force Base. Linda did not obtain independent legal advice, though she may have accompanied Tommy to the JAG office. Tommy filled in most of the petition, but Linda filled in some information about household furnishings. In the space for listing marital assets, no mention was made of either Tommy's retirement benefits or the house in Texas. However, in the space provided for husband's income per month, $728.00 was written in. The petition lists the value of the oil leases at $40,000, but allegedly this figure was added in after Linda signed the petition.

Linda signed a quitclaim deed for the Texas house when she signed the dissolution petition. She testified that Tommy told her they could not get a divorce unless she signed it and that he needed her to sign it in order to sell the house. She testified that she thought she still had a one-half interest in the house in accordance with an alleged oral agreement between the parties.

The petition proposed that the oil leases, the car, and some household furnishings be awarded to Tommy, and some household furnishings to Linda. The oil leases and the car were listed as Tommy's separate property. The petition provided that Tommy would be responsible for over $7,000 in debts. It also provided that Tommy would pay $4,000 to Linda as the down payment on a mobile home. Finally, the petition provided that Tommy would pay Linda $150 per month per child for child support and that he could claim the children as dependents for income tax purposes. Linda and Tommy agreed that they would have joint legal custody of the children, with Tommy having physical custody during the school year and Linda having physical custody during the summer.

Tommy attended the dissolution hearing but Linda did not, apparently because she had to work. Linda signed a waiver of appearance stating that she agreed to all the terms of the petition. Tommy told the Master that the petition listed all the parties' property, debts, and financial agreements. He also stated that his wife had no interest in the oil leases. The superior court approved the petition on the Master's recommendation and entered a decree of dissolution, effective September 19, 1984.

In July 1987 Linda retained counsel and filed a motion to modify and enforce the decree of dissolution. She sought modification of the child custody agreement to give her legal custody of their daughter Tiffany[3] during the school year. Despite the decree, Linda had retained physical custody of the children during all school years since the divorce; they lived with Tommy during only the summers. Linda asked that she be allowed to claim Tiffany and Tony as dependents for income tax purposes because she actually provided more than half their support.[4] Linda asserted that she and Tommy had an oral agreement at the time of dissolution whereby Tommy would sell the Texas home and give her half the profits, if any. Since it appeared Tommy was not making any effort to sell the house, she asked that he purchase her half

---

1. Linda and Tommy bought the house in 1978 by assuming a mortgage of $36,600. At dissolution the balance of the mortgage was about $34,000. Linda thought the house was worth $60,000 because it had been up for sale for that amount. Tommy testified that it did not sell at that price or after he lowered the price to the "high forties." The parties stipulated that it was appraised for tax purposes at the time of dissolution at $51,000.

2. Tommy asserts that at the time of dissolution, the oil business was $40,000 in debt, and that if he filled in the value as $40,000 on the dissolution petition it was meant to be negative. The leases have since been repossessed by the bank. Linda testified that she had no idea what they were worth in 1984.

3. Tony was enrolled in college by this time and was about to reach majority.

4. The parties settled the custody and visitation matters before trial. Linda also withdrew her request to claim Tony as a dependent.

for $18,000. Lastly, she asked that the court increase Tommy's child support payments for Tiffany.

Tommy opposed the modification and the case proceeded for almost two years.[5] On May 26, 1989, after the modification and enforcement case was set for hearing, Linda filed a new motion for relief from judgment pursuant to Alaska Civil Rule 60(b). She asked the court to set aside the property settlement and to award her a share of Tommy's military retirement benefits. Linda asserted that at the time of the dissolution she agreed to give up the retirement benefits in exchange for half the proceeds from the sale of the house, but that Tommy never intended to sell the house and allowed it to deteriorate.

Trial on the issues of back child support and property division was held September 18, 1989. Superior Court Judge Victor D. Carlson found that the military retirement was not disposed of in the dissolution, and that Linda was entitled to half of the benefits accrued during the marriage. In his oral ruling, he stated that the proceeding "comes within the provisions of" Civil Rule 60(b)(6), although the rule is not mentioned in his written decision. He found that the house had been disposed of in the dissolution, finding that the $4,000 to have been paid to Linda under the dissolution decree was in exchange for her interest in the house. He also found that Tommy never paid $3,500 of the $4,000. Judge Carlson further determined that Linda was entitled to $359.60 per month in back child support for Tiffany from the date Linda filed the petition to increase support through the effective date of the order (August 1987 through October 1988). Apparently the extent of retroactive support was due in part to Tommy's delay in submitting financial information to opposing counsel. Finally, the superior court determined that Linda was the prevailing party and thus entitled to attorney's fees and costs. Tommy appeals.

## II. DISCUSSION

### A. Did the Trial Court Err in Granting Relief Under Civil Rule 60(b)?

■ Alaska Statute 25.24.160(a) provides the statutory authority for a court to adjudicate property rights. However, AS 25.24.160(a) does not authorize a court to dispose of assets on a piecemeal basis where, as here, the parties' property rights have been purportedly adjudicated and incorporated into a final judgment. As this is not an initial adjudication of the parties' property rights, relief may be granted only within the parameters of Civil Rule 60(b).[6]

Civil Rule 60(b) authorizes a court on motion to set aside a judgment which is unjust.[7] *See Alaska Truck Transport, Inc. v. Berman Packing Co.,* 469 P.2d 697, 699 (Alaska 1970). In granting Linda's Rule 60(b) motion, the superior court relied heavily on the fact that the retirement benefits had not been disposed of in the dissolution.

■ We will not disturb a trial court's grant of a Rule 60(b) motion except upon a showing of an abuse of discretion. *Gravel v. Alaskan Village, Inc.,* 423 P.2d 273, 277 (Alaska 1967). "On the other hand, whether the trial court applied the appropriate legal standard in exercising its broad dis-

5. In September 1987 Judge Michalski granted Linda's emergency motion to allow Tiffany to stay with her in Anchorage for the school year. In December 1987 Judge Michalski, on Linda's motion, ordered Tommy to file a financial declaration. In September 1988 Judge Carlson, on Linda's motion, ordered Tommy to file a Child Support Guidelines Affidavit. On October 5, 1988, Judge Carlson ordered that Tommy pay $359.60 per month in child support for Tiffany beginning October 1, 1988. On March 17, 1989, Linda moved for a hearing on her original motion to modify the decree.

6. Consequently, we need not discuss Tommy's challenge to the superior court's finding that there was no agreement concerning the retirement benefits. It is irrelevant whether there was any agreement because the court may not set aside the judgment on that basis.

7. The superior court found that the dissolution petition on its face awarded Tommy a substantial portion of the marital assets and that it did not purport to dispose of the military retirement benefits, a major asset of the marriage. Implicit in these findings is the conclusion that the judgment was unjust.

cretion is a question of law regarding which this court may substitute its independent judgment on appeal." *Laing v. Laing*, 741 P.2d 649, 651 (Alaska 1987).

■ Under Alaska Civil Rule 6(b), the superior court lacks subject matter jurisdiction to set aside judgments unless a motion is made within the Rule 60(b) time limits. *O'Link v. O'Link*, 632 P.2d 225, 226–27 n. 2 (Alaska 1981). If the motion is based on grounds listed under subsections (1) through (3) of Rule 60(b), it must be brought "not more than one year after" the final judgment.[8]

The superior court granted Linda's motion based on subsection (6) of Rule 60(b), which gives the court the power to set aside a judgment for "any other reason justifying relief from the operation of the judgment." A motion under subsection (6) is not subject to the one year time limit, but still must be brought within a "reasonable time." *Id.* at 229. We have previously explained the circumstances under which subsection (6) may be invoked:

> Clause (6) and the first five clauses of Rule 60(b) ... are mutually exclusive. Relief under clause (6) is not available unless the other clauses are inapplicable. Clause (6) is reserved for extraordinary circumstances not covered by the preceding clauses. The purpose of the clause has been described as follows:

> > In general, relief is given under clause (6) in cases in which the judgment was obtained by the improper conduct of the party in whose favor it was rendered or the judgment resulted from

the excusable default of the party against whom it was directed under circumstances going beyond the earlier clauses of the rule....

> > ... The broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests.

*Id.* at 229–30 (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2864, at 213–14 (1973)) (footnotes and citations omitted).

■ Linda makes several arguments in support of her Rule 60(b)(6) motion. First, she argues that she did not know that she was entitled to a portion of the retirement benefits and that she did not know what they were worth. Even if true, these assertions amount to a claim of mistake or inadvertence under subsection (1), and are barred by the one year time limit.

■ Second, Linda argues that Tommy lied to the court at the dissolution hearing by not disclosing the existence of the retirement benefits or the marital home and by telling the court that Linda had no interest in the oil leases, evidence of which Linda allegedly had no knowledge until 1989 when she read a transcript of the dissolution hearing. Even if true, these assertions amount to a claim of fraud, misrepresentation, or other misconduct under subsection (3), or a claim of newly discovered evidence under subsection (2), and are barred by the one year time limit.[9]

---

8. Linda sought relief under subsections (3), (4), and (6) of Civil Rule 60(b), which provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;

> ....
> (6) any other reason justifying relief from the operation of the judgment.
> The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the date of notice of the judgment or order.... This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant not personally served, or to set aside a judgment for fraud upon the court.

On appeal Linda does not claim a right to relief under subsection (4).

9. The savings clause of Rule 60(b) provides a ground for relief for a "fraud upon the court."

■ Third, Linda argues that she was pressured into forgoing the retirement benefits because Tommy "threatened to fight her with every dime he had." This does not amount to the "extraordinary circumstances" justifying relief under subsection (6) of Rule 60(b). Linda remained under a duty to take legal steps to protect her interests. Tommy's alleged threat amounted at most to a strong assertion that he intended to use every available legal means to protect his interests. Linda offered no excuse for her own neglect, except that she could not receive free legal advice on Elmendorf Air Force Base because Tommy had already consulted the JAG office there.[10] The circumstances complained of do not rise to the level of duress or coercion, a possible basis for relief under subsection (6) of Rule 60(b). *See Gravel*, 423 P.2d at 275–76 (record did not support appellant's contention that he was deprived of his free will and induced to settle his case under coercion and duress). *But see J.C. v. M.L.C.*, 668 P.2d 1351, 1352 (Alaska 1983) (alleged threats are essentially a claim of duress, which fall within subsection (3)).[11]

■ Lastly, Linda argues that initially she indicated Tommy should have the retirement benefits because he was supposed to be taking care of the children during the school year and would need the money, but that such an underlying basis for any agreement was undermined when Tommy did not take the children.[12] There is no dispute that the dissolution petition provided that Tommy would have primary custody of the children and that Linda in fact had primary custody after the dissolution. This provides a valid basis for modifying the dissolution decree under subsection (6) of Rule 60(b). In *Schofield v. Schofield*, 777 P.2d 197 (Alaska 1989), and *Foster v. Foster*, 684 P.2d 869 (Alaska 1984), we enunciated four factors which constitute "extraordinary circumstances" justifying relief under Rule 60(b)(6) from a property division. Those factors were: (1) the fundamental, underlying assumption of the dissolution agreement had been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the marital residence was the par-

---

*O'Link*, 632 P.2d at 230. A fraud upon the court may only be found in the most egregious circumstances, "involving a corruption of the judicial process itself." *Allen v. Bussell*, 558 P.2d 496, 500 (Alaska 1976); *see also O'Link*, 632 P.2d at 231 (Parties' failure to make "full and fair disclosure" was not fraud upon the court for "the fraud, if any, was only between the two parties and did not involve a direct assault on the integrity of the judicial process."); *Stone v. Stone*, 647 P.2d 582, 586 n. 7 (Alaska 1982) (wife's motion to modify property decree fifteen months after it was entered because husband never intended to sell condominium at the time of their agreement was within the ambit of Rule 60(b)(3), therefore the court did not have jurisdiction to grant relief from the original decree); *Livingston v. Livingston*, 572 P.2d 79, 84–85 (Alaska 1977) (failure of wife or her counsel to disclose that child was physically located in another state and was living with husband was not a "fraud on the superior court").

It is clear from the record that the parties did not disclose to the court the existence of the Texas house, nor did Tommy inform the Master that his $728.00 "income" was retirement benefits. The superior court, however, did not find that there was a fraud perpetuated upon the court, and we cannot say that the circumstances complained of here rise to that level as a matter of law.

**10.** Linda testified on cross examination that she did not consider going to the other military base in Anchorage, Fort Richardson, and that she was not aware that the JAG office at Elmendorf frequently referred people to Fort Richardson. [Tr. 68–69] She did not offer any reason for not having consulted counsel outside the military.

**11.** Linda cites *Crafts v. Morgan*, 776 P.2d 1049 (Alaska 1989), because it "closely resembles" this case. It is true that in *Crafts* the wife assisted the husband in filling out the dissolution petition, she did not have the assistance of counsel, the petition did not list their major assets, and the wife did not attend the dissolution hearing, but her motion to vacate the decree was brought just a few days after the decree was entered, so no jurisdictional problems were presented. We vacated the property division portion of the dissolution petition because the moving party did not "understand fully the nature and consequences of [her] action" as required by AS 25.24.230(a)(1). *Id.* at 1054.

**12.** Linda's admission that she had discussed Tommy's retirement benefits with him is not inconsistent with the superior court's finding that the benefits were not disposed of in the dissolution.

ties' principal asset. *Schofield*, 777 P.2d at 202.

In *Foster*, the parties had agreed to continue as co-owners of the marital home and to split the equity upon sale. 684 P.2d at 871. The underlying assumption which was destroyed was that the parties would continue to live together in the marital home with their children after the dissolution. *Id.* In *Schofield*, the dissolution decree awarded the marital home to the husband. 777 P.2d at 198–99. The underlying assumption which was destroyed was that the husband would have custody of the Schofield children. *Id.* at 200–02.

In this case, Linda signed the dissolution petition based on the assumption that Tommy would have primary physical custody of their children. This assumption was destroyed from the outset because Tommy never had primary physical custody of the children.

The second and third factors listed in *Schofield* are also present here because the property division was poorly thought out and made without the assistance of counsel, at least on Linda's part. Finally, the superior court found that the military retirement benefits were a major asset of the parties' marriage, thus satisfying the fourth requirement of *Schofield*.

█ Nevertheless, a motion under subsection (6) of Rule 60(b) must be made within a "reasonable time." *Schofield*, 777 P.2d at 202. We cannot say that a motion for relief made four and a half years after entry of judgment is per se unreasonable. *See id.* (Rule 60(b)(6) motion made eight years after judgment was made within a reasonable time.). Since the superior court made no reference to the timeliness of Linda's motion in either its oral or written decision, we remand the case to the superior court for a determination of whether Linda's motion was made within a reasonable time. In determining what is a reasonable time for purposes of Rule 60(b), the superior court should take into account the purposes of the rule: "Rule 60(b), in its entirety, attempts to preserve the delicate balance between the conflicting principles that litigation be brought to an end and

that justice be done in light of all the facts." *Livingston*, 572 P.2d at 85. It is undisputed that the key fact justifying relief, that the children did not go to live with Tommy as contemplated, arose immediately after the dissolution.

**B. Did the Trial Court Err in Calculating Child Support?**

█ We find merit to Tommy's argument that his child support obligation under Alaska Civil Rule 90.3 should take into account the qualified domestic relations order awarding Linda a portion of his military retirement benefits. The order by its terms took effect September 18, 1989, therefore any child support calculation up until that date was correct. However, if the order is allowed to stand on remand, the child support must be recalculated.

Rule 90.3(a) provides in part:

A child support award in a case in which one parent is awarded sole or primary physical custody as defined by paragraph (f) will be calculated as an amount equal to the adjusted annual income of the noncustodial parent multiplied by a percentage specified in subparagraph (a)(2).

(1) Adjusted annual income as used in this rule means the parent's total income from all sources. . . .

Clearly any portion of Tommy's retirement which is paid to Linda should not be considered and is not income to Tommy for purposes of this rule.

In *Bergstrom v. Lindback*, 779 P.2d 1235, 1237 (Alaska 1989), we held that a prospective child support obligation calculated under Rule 90.3 must include actual earnings:

[T]he superior court's determination of prospective child support was based on the erroneous assumption that Lindback would not teach during the fall of 1987. . . . We conclude that the superior court erred in failing to include Lindback's actual 1987 earnings in her adjusted annual income to determine the prospective child support award.

A child support obligation under Rule 90.3 must be based on the parent's actual adjusted annual income.

### C. Did the Trial Court Err in Awarding Linda Attorney's Fees?

Tommy asserts that the superior court erred in awarding Linda $7,000 of her requested $9,171.06 in attorney's fees. Linda argues that the award was proper given her prevailing party status, their disparate incomes, and Tommy's wrongdoing. We review a trial court's award of attorney's fees under Alaska Civil Rule 82 for abuse of discretion. *O'Link*, 632 P.2d at 231.

The attorney's fees award must be vacated if Tommy prevails on remand. The divorce judgment exception to Rule 82 does not apply to post-judgment modification and enforcement motions. *L.L.M. v. P.M.*, 754 P.2d 262, 264 (Alaska 1988). Fees are appropriately awarded under the prevailing party standard of Rule 82 for post-judgment money and property issues. *Id.* The parties' relative economic positions are irrelevant under Rule 82.

Linda's attorney's itemized billing includes all work done on the case, including the custody and visitation issues. Work on those issues is not properly chargeable to Tommy under Rule 82. If Linda prevails on remand, the court must accordingly reconsider the attorney's fee award.

REVERSED and REMANDED for further proceedings consistent with this opinion.