Albert MORRIS, Appellant,

v.

Donna MORRIS, Appellee.

No. S–5592.

Supreme Court of Alaska.

Dec. 15, 1995.

Elizabeth Page Kennedy, Anchorage, for Appellant.

Ernest M. Schlereth, Law Office of Ernest M. Schlereth, Anchorage, for Appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

COMPTON, Justice.

Albert Morris was mentally and physically incapacitated due to a workplace injury, for which he received federal workers' compensation benefits. As the illness progressed, he was declared incompetent and Donna Morris, his wife, was named his guardian. He was placed in a nursing home, his caretaking paid by federal workers' compensation. Donna filed for divorce, and a temporary guardian

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

was named for Albert. Donna and the guardian agreed to a divorce settlement. Donna received all assets, including the family home and ninety percent of Albert's monthly federal workers' compensation benefits. She agreed to pay all debts. Albert retained other disability benefits and ten percent of his monthly federal workers' compensation benefits. The settlement was incorporated into a final divorce decree. Less than one year later, Albert's new guardian moved under Civil Rule 60(b) to modify the judgment. The motion and a motion for reconsideration were denied, and this appeal followed. We affirm.

## I. FACTS AND PROCEEDINGS

### A. Factual History

Albert and Donna were married in 1968. They have four children. At the time the complaint was filed, two of the children were over eighteen and out of high school, the other two under eighteen and living with Donna. One of these children has since reached majority and graduated from high school. The other is still a minor and lives with Donna.

Albert worked as a federal civil service employee de-icing airplanes at an air force base. In 1982 he was stricken with multiple sclerosis (MS) caused or aggravated by the presence of a substance in the de-icing solution. His mental and physical condition gradually deteriorated. Albert sought federal workers' compensation benefits. He started receiving benefits in 1986. These benefits total over $2200 per month. From 1982 to 1991, Donna cared for Albert at home. She also ran a dog grooming business and earned extra money in the winter plowing snow using family pickup trucks. Donna's health suffered under the strain of caring for Albert and from the existence of carpal tunnel syndrome in both her hands. She used Albert's benefits to pay family expenses.

In April 1991 Albert was declared incompetent and placed in a nursing home. Albert's federal workers' compensation paid for the full cost of the nursing home. Donna was appointed as Albert's guardian and the conservator of his estate. *In re Guardian-*

*ship/Conservatorship of Albert G. Morris,* No. 3AN–91–278 Ci. (Sup.Ct., April 4, 1991). In May, Donna filed for divorce. The Office of Public Advocacy (OPA) was appointed "co-guardian/conservator" for the limited purpose of representing Albert's interests in the divorce. Betty Stanley of OPA assumed these duties and employed attorneys to represent Albert in the divorce.

On Albert's behalf, Stanley entered into a "Child Custody and Property Settlement Agreement" with Donna. Under the settlement, the children receive a one-half interest in the family home held in trust. Donna receives the other half interest in the home, the dog grooming business, all family vehicles, and ninety percent of Albert's monthly federal workers' compensation benefits. Albert receives the remaining ten percent of his benefits. In addition, Albert continues to receive Social Security and Veteran's Administration (VA) benefits totaling $580 per month.

Pursuant to the settlement, Stanley signed a quitclaim deed to the house on Albert's behalf. Donna claims that both the dog grooming business and the home carry substantial debt. The record does not contain a statement of the equity in either the business or the home, nor does it indicate Donna's income. The parties stipulated that Albert's federal workers' compensation benefits "were accrued during the marriage and are marital property."

A hearing on the settlement was held before Master Andrew Brown on August 27, 1991. Neither counsel explained the basis for the agreement to give Donna ninety percent of Albert's federal workers' compensation benefits. Donna and Stanley testified, but neither explained why Donna was to receive Albert's benefits.

Donna's testimony, which primarily dealt with Albert's illness, her reasons for wanting a divorce, and other aspects of the divorce agreement, generally suggests that she believed she was entitled to a generous property award because she had more or less single-handedly provided for Albert and the children during the ten years of his illness, and because she intended to continue to provide for the two children remaining in the

home. She noted that Albert would not be making child support payments.

Stanley testified that she had been appointed to look after Albert's interests in the divorce proceeding. She indicated that she had visited Albert on July 6, and confirmed that he suffered from progressive and terminal MS. Stanley stated that she did not disagree with Donna's testimony. She explained that Albert's medical care was paid by federal workers' compensation, with extras paid by the VA. Stanley then concluded: "At this time he only needs sufficient funds for personal needs—ice cream cones, haircuts, clothing—just basic daily things. His personal hygiene items are furnished by the nursing home, so his needs are very limited at this time." Lastly, when Stanley was asked whether she believed that the property agreement was fair and equitable on behalf of Albert, she replied, "yes."

Master Brown tentatively approved the agreement. He made only two express findings. The first was that it would be manifestly unjust to order Albert to pay any child support, given his incapacity and lack of income.[1] The second was that the "property agreement appears fair."

The settlement was adopted and incorporated by reference into a divorce decree entered on October 7. The court specifically stated:

> [A]lthough no property rights are to be adjudicated by the Court, a settlement agreement has been signed and filed with the Court by [Donna and Albert], the Court does find that their said division of marital assets, liabilities and property rights, particularly concerning [Albert's] Federal Workers' Compensation benefits, is a fair and equitable division of marital property and adequately and reasonably meets the respective financial obligations of the parties concerning their mutual child support obligation as well as [Al-

bert's] obligation, if any, to provide rehabilitative support for [Donna].

Later that month Donna remarried.

### B. *Procedural History*

In December 1991 OPA was named sole conservator of Albert's estate. OPA and Donna were named co-guardians. In September 1992 Albert's new OPA conservator/co-guardian filed on Albert's behalf a Motion for Partial Relief from Order under Civil Rule 60(b). He sought to modify the 90%–10% division of the federal workers' compensation benefits. The motion was based upon allegations that certain assumptions underlying the agreement proved to be incorrect.

The superior court denied the motion for relief and also a motion for reconsideration.

## II. *DISCUSSION*

### A. *Standard of Review*

■ We will not disturb a trial court's ruling on a Rule 60(b) motion unless an abuse of discretion is demonstrated. An abuse is demonstrated where we are " 'left with the definite and firm conviction on the whole record that the judge made a mistake.' " *Farrell v. Dome Lab.*, 650 P.2d 380, 384–85 (Alaska 1982) (quoting *Gravel v. Alaskan Village, Inc.*, 423 P.2d 273, 277 (Alaska 1967)).

### B. *Civil Rule 60(b)*

In *Allen v. Allen*, 645 P.2d 774 (Alaska 1982), we observed:

> The provisions of a decree adjudicating property rights, unlike provisions for child support, child custody or alimony, constitute a final judgment not subject to modification.... The court has no inherent equitable power to modify property rights that are part of a final decree. Rather, the provisions of a decree adjudicating property rights are modifiable only to the extent that relief may be obtained from any other final judgment.

---

1. It is not clear on what basis Master Brown concluded that Albert lacked income. His federal workers' compensation, social security, and veteran's benefits totalled approximately $2800 per month. In addition, his basic needs for food and shelter were provided by federal workers' compensation.

*Id.* at 776 (citations and footnotes omitted). Hence, Albert must seek relief from this judgment under Civil Rule 60(b). *Id.*

In Albert's motion under Civil Rule 60(b) for partial relief from the trial court's judgment, he alleged that certain assumptions underlying the agreement eventually proved to be incorrect. He did not specify the subsection of Rule 60(b) on which he relied. However, by citing *Foster v. Foster*, 684 P.2d 869 (Alaska 1984), he implied reliance on subsection (6). Rule 60(b)(6) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (6) any other reason justifying relief from the operation of the judgment.

The only authority Albert cites regarding Rule 60(b)(6) are cases which address the timeliness of a subsection (6) motion, not whether facts alleged by Albert would justify relief under a subsection (6).

■■■ The superior court implicitly ruled that uncertainty regarding Albert's benefits was itself an assumption on which the negotiated agreement was predicated. The parties "thought the workers [sic] comp. claim might fold," not that they assumed that it would.

The court characterized the division of compensation benefits as neither alimony, nor child support, nor division of marital property. Instead, the court viewed the division as an assignment of benefits governed by traditional contract principles.[2] In discussing the nature of the agreement and entitlement to relief under Rule 60(b), the court concluded:

> I interpret the extensive negotiations and the careful negotiations that went on as resulting, not in alimony, not in a division of marital assets (because it is not a marital asset) but in an assignment of Mr. Morris' workers' compensation benefits. As far as I know, those are assignable and Mr. Morris, with the legal representatives that he had at the time, was empowered to assign those benefits. He basically assigned them for the economic benefit of the family and *he did it for common and as far as I know, perfectly legitimate purposes of maximizing the resources that would be available to the family.* [While] I have sympathy for Mr. Morris' predicament, you cannot override the requirements of the law. *Under 60(b), the only thing that I see there that could possibly apply would be a claim that a property division of this type, an assignment of this type, might be void for violating public*

---

**2.** The parties and the court each use different legal labels to describe the assignment of 90% of Albert's federal workers' compensation benefits to Donna.

Albert characterizes the assignment as either alimony or child support. He correctly argues that this assignment would be invalid under either characterization. The assignment cannot be characterized as alimony, because it is perpetual. Were it alimony, it would not be prospectively enforceable due to Donna's remarriage. *Voyles v. Voyles*, 644 P.2d 847, 848 (Alaska 1982). Further, we have repeatedly stated a preference for property division over alimony. *Hilliker v. Hilliker*, 755 P.2d 1111, 1112 (Alaska 1988). It cannot be characterized as rehabilitative or reorientation alimony, as it does not relate to Donna's earning ability, financial situation, or job plans. *Davila v. Davila*, 876 P.2d 1089, 1094 (Alaska 1994). The amount to be paid by virtue of the assignment was not calculated under the child support guidelines of Civil Rule 90.3. Therefore, it is not enforceable as child support. *Cox v. Cox*, 776 P.2d 1045 (Alaska 1989).

Donna describes the assignment as a division of marital property. In the settlement, the parties stipulated that the benefits "were accrued during the marriage and are marital property." Albert correctly counters that his federal workers' compensation benefits that accrue after the divorce are his separate property. *See Miller v. Miller*, 739 P.2d 163, 165 (Alaska 1987).

The superior court characterized the assignment as a contractual assignment of Albert's future federal workers' compensation benefits. The parties to a divorce may make a binding division of separate or marital property. *See Dowling v. Dowling*, 679 P.2d 480, 483 n. 7 (Alaska 1984); *In re Estate of Kuhns v. Kuhns*, 550 P.2d 816, 819 (Alaska 1976). Arguably the settlement was an assignment of future separate property rights. Indeed, the superior court characterized the assignment as a contractual assignment of Albert's future federal workers' compensation benefits. The erroneous description of the benefits as marital property would not preclude the superior court from correctly characterizing the benefits as separate property contractually assigned. Similarly, while the assignment may have served general alimony or child support purposes, it has none of the other indicia of these forms of relief. The superior court's analysis of the agreement is plausible.

*policy. Nobody has made that argu-. ment.... I believe that it is not void. I believe that it is an enforceable agreement.*

(Emphasis added.) The superior court's ultimate conclusion was that no factual or legal basis for Albert's claim had been established.

Despite his motion under Rule 60(b) in the superior court, in his *Brief of Appellant* Albert has not argued to this court that the superior court's denial of the Rule 60(b) motion was itself an error.[3] Rather, Albert has argued the merits of the underlying substantive issues, just as though this was an original appeal. As we have stated, "Civil Rule 60 is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment." *Burrell v. Burrell,* 696 P.2d 157, 163 (Alaska 1984).

Donna argues in her *Appellee's Brief* that Albert did not demonstrate to the superior court any basis for relief under Rule 60(b). In his *Reply Brief* Albert merely mentions Rule 60(b). He does not present to this court, even belatedly, any factual allegations which would support relief under the provisions of Rule 60(b). He has not shown that any facts were presented to the superior court from which it could have concluded that he was entitled to such relief, or from which we could conclude that the superior court erroneously held he was not entitled to such relief.

## III. CONCLUSION

Albert has not demonstrated that the superior court abused its discretion in denying his motion for partial relief under Civil Rule 60(b). The judgment of the superior court is AFFIRMED.

---

**3.** Normally an argument that is not raised or is inadequately briefed is deemed waived. *See* *Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).