Carolina CRAFTS, f/k/a Carolina Morgan, Appellant,

v.

Peter MORGAN, Appellee.

No. S–2637.

Supreme Court of Alaska.

June 30, 1989.

Drew Peterson, Anchorage, for appellant.

Maryann E. Foley, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION.

Carolina Crafts (formerly Carolina Morgan) appeals from the superior court's approval of a dissolution petition which she and her former husband, Peter Morgan, filed in 1984. Specifically, Carolina appeals on the grounds that she unknowingly waived her right to share in the marital property, and that the property division

was unfair because the division resulted in Peter retaining all of the marital property listed in his name. Carolina also appeals the superior court's award of attorney's fees to Peter.

### II. FACTS AND PROCEEDINGS.

Carolina was born in the Philippines and moved to the United States in 1975. She met her first husband in West Virginia and was married in January 1977. In September 1977, Carolina moved to Alaska after her first husband left her. Three months later, their only child, Theresa, was born. Carolina and her first husband possessed minimal property during their marriage, and they kept their own personal belongings after separating. In February 1980, Carolina contacted a legal aid attorney and obtained a dissolution of her first marriage from the Alaska superior court.

Later that same month, Carolina and Peter were married. Peter adopted Theresa in May 1982. On July 11, 1984, Carolina and Peter filed a petition for voluntary dissolution with the superior court pursuant to AS 25.24.210.[1] Neither party was represented by counsel. Carolina helped fill out the dissolution papers (six pages of forms provided by the court system) and signed them voluntarily.

The dissolution agreement provided that Carolina would retain custody of Theresa. Peter agreed to provide child support in the amount of $100 per month. In addition, Peter agreed to pay for Theresa's day care and private school tuition costs of roughly $325 per month. The parties agreed that Peter would be able to visit Theresa "anytime [he] wants to."

---

1. Alaska Statute 25.24.210 provides in relevant part:

(c) The petition shall state that the spouse or spouses executing the petition consent to the jurisdiction of the court.

. . . .

(e) If the petition is brought by both spouses under AS 25.24.200(a), the petition shall state in detail the terms of agreement as between the spouses with regard to the custody of children, child support, visitation, spousal support and tax consequences, if any, division of property, and allocation of debts, and, in addition, shall state

(1) the respective occupations of the spouses;
(2) the income, assets, and liabilities of the respective spouses at the time of filing the petition;
(3) the date and place of the marriage;
(4) the name, date of birth, and current custodial status of each minor child born of the marriage or adopted by the petitioners;
(5) whether the wife is pregnant;
(6) other facts and circumstances which the petitioners believe should be considered; and
(7) any other relief sought by the spouses.

Carolina admits that she knew that Peter had a state pension and a great deal of real and personal property in his own name. However, the petition did not provide for any spousal support or property division. In the spaces provided for the disclosure and division of the parties' assets and debts was written: "N/A—We have no jointly owned real property. N/A. We have no jointly owned personal property. N/A. We have no jointly owed debts." Pursuant to AS 25.24.200(c), Carolina signed a form waiving her right to receive notice of, and to appear at, the dissolution hearing.

A hearing was held before the superior court divorce master on August 22, 1984. Carolina was not present. After examining Peter, the master recommended entry of a dissolution decree upon the terms outlined in the parties' petition. On August 23, the superior court entered a dissolution decree incorporating the terms of the parties' petition as recommended by the master. The decree stated in part: "Petitioners understand fully the nature and consequences of this action."

On August 23 or 24, Carolina consulted an attorney because she was having second thoughts about the terms of the dissolution. That same day, Carolina went to the courthouse to withdraw the petition, but she discovered that a decree had already been entered. On August 29, she wrote a letter to the superior court requesting that the portions of the decree relating to the division of property, child support, and alimony be vacated. She explained: "It has come to my attention that, under State Law, I am entitled to a fair share of assets ... accumulated during the marriage." She further asserted that the financial data on the petition was inaccurate, and that even though she had signed a waiver, she had intended to attend the hearing but had not been notified of the date. The master sent Peter a copy of Carolina's letter, which was treated as a motion to vacate the dissolution decree.

Peter filed a reply to the motion objecting to Carolina's request. Without holding a hearing, the master issued a report concluding that "[t]here is no evidence indicating [Carolina] did not understand the documents she signed and the consequences of her signature to them." He therefore recommended that the superior court deny her request to vacate the decree.

Carolina then filed a motion for reconsideration of the master's report and for a hearing. The superior court granted her motion and held two subsequent hearings. At the end of the second hearing, the superior court concluded:

I find that Mrs. Morgan is an intelligent, knowledgeable person who knew what she was doing and she did it freely and voluntarily without any coercion. And she's estopped to deny that she didn't do it knowingly, inasmuch as there's sufficient proof to show that she knew what the parties' assets were. She's a university student, she's intelligent, she's fluent in the language, and I don't find that people in Mrs. Morgan's position, and specifically Mrs. Morgan, are at a disadvantage in dealing with this system. And I especially find that, in view of the fact that she has hired a lawyer in the past, retained a lawyer in the past, and been through a divorce proceeding. The evidence just does not support the fact that she was in any way coerced, defrauded, fooled or any other such thing, and therefore the provisions of the Rules which would allow reopening this case, setting aside the portions of the decree, there is no factual basis to support them, and in fact the legal argument which [Mr. Morgan] makes is appropriate. There is a public policy argument. And the public policy is that people are free to do what they want to do within the law. And it appears to me that Mrs. Morgan freely and voluntarily signed to get her marriage dissolved, and under no circumstances do I see a reason for setting it aside and going through it again. The motion is denied, the Master's report is approved.

The court then entered an order denying Carolina's motion to vacate the dissolution decree, and Carolina appealed to this court.

We reversed the portion of the superior court's order upholding the property settle-

ment and remanded to the superior court with instructions to address two questions: "(1) Did Carolina Morgan fully understand the nature and consequences of her actions and (2) is the relief sought fair and reasonable in all aspects, as required by AS 25.-24.230(a)(2)." *Morgan v. Morgan,* Mem.Op. & J. No. 349 (July 15, 1987).

On remand the testimony before the master showed that Peter believed that Carolina was not entitled to any portion of the property listed in his name. The master found that "[i]t is most likely that if there was any discussion on property [prior to the dissolution], it was limited to [Peter] telling [Carolina] that there was no joint property and her believing him." Nevertheless, the master concluded that Carolina had understood the dissolution process and its consequences, and that the property settlement giving Peter all of the marital property subject to division was not "grossly unfair, unjust, or inequitable." The master recommended that the superior court approve the original property division and award Peter $6,107.25 in attorney's fees, representing the full fees charged by his counsel. The superior court approved the master's report and entered judgment in favor of Peter incorporating the master's recommendations in full. Carolina now brings this second appeal.[2]

### III. DID CAROLINA KNOW HER MARITAL PROPERTY RIGHTS BEFORE SIGNING THE DISSOLUTION AGREEMENT?

■ Carolina contends that the parties' property settlement was a result of a "mutual mistake." She argues that the master's findings do not support the conclusion that she was knowledgeable as to her marital property rights. Peter, on the other hand, takes the position that the master's conclusion that Carolina knowledgeably waived her rights to the marital property is supported by the evidence and should be affirmed.

In deciding Carolina's first appeal, we ordered the superior court to determine whether she "fully underst[ood] the nature and consequences of her actions." A finding of "full understanding" by the parties is a statutory prerequisite to the superior court's approval of a petition for dissolution. AS 25.24.230(a)(1).[3]

The master's findings do not refer to any evidence which would indicate that either party was aware of Carolina's right to share in properties listed in Peter's name. Rather, the only evidence regarding the parties' understanding of their marital property rights supports the opposite conclusion. This inference is reflected in the following findings of fact entered by the master on remand:

15. Part II.C.1. and 2. of the Petition on assets has written "N/A WE HAVE NO JOINTLY OWNED REAL PROPERTY", "N/A WE HAVE NO JOINTLY OWNED PERSONAL PROPERTY." Part II.D. on debts has "N/A WE HAVE NO JOINTLY OWED DEBTS." This is in Mr. Morgan's handwriting, as is the rest of the Petition's terms. It is most likely that if there was any discussion on property, it was limited to Mr. Morgan telling Ms. Crafts that there was no joint property and her believing him.

At the original dissolution hearing, "[the master] recited the Petition's language on property and debts and [Peter] responded that it was 'correct' that there was no joint

---

2. In reviewing the superior court's decision to deny Carolina's motion to vacate the property division portion of the dissolution decree, we must determine whether the master's findings of fact adopted by the superior court were "clearly erroneous." Alaska R.Civ.P. 52(a). "Findings are clearly erroneous if, based on the record as a whole, the court is left with the definite and firm conviction that a mistake has been made." *Headlough v. Headlough,* 639 P.2d 1010, 1012 (Alaska 1982).

3. Alaska Statute 25.24.230(a)(1) provides:

If the petition is brought by one or both spouses under AS 25.24.200(a), the court may grant the spouses a final decree of dissolution and shall provide the other relief as provided in this section if the court, upon consideration of the information contained in the petition and the testimony of the spouse or spouses at the hearing, finds that

(1) the spouses understand fully the nature and consequences of their action.

property or joint debts." The following exchange then took place:

Q Has the personal property already been divided between the two of you ... [?]

A No, sir, we—we each have our own personal property.

....

Q At the time of separation, then, did you divide whatever had to be divided? I mean, you know, whether it was furniture, appliances, clothes?

A No, sir. She still has some of her things in my house, but, you know, I'm not claiming ownership of her—her things that she owns.

Q What are some of these things?

A Oh, she's got her clothes, she's got a china cabinet, some fancy dishes, you know, things like that. She....

Q Is there any potential for dispute over who gets what with whatever is in your place, or whatever is in her place?

A No, sir, there—she's—she's welcome to have anything that she wants out of that—out of the house, and—well, not anything—let me rephrase that. Not anything she wants, but anything that is hers.

Q But there's no—you didn't think there'd be any dispute as to what is hers?

A No, sir.

This evidence does not support the conclusion that the parties understood their marital property rights prior to signing the dissolution agreement.

The master found other evidence persuasive in resolving the question of Car-

olina's understanding of the consequences of her actions. Specifically, the master concluded that, because of Carolina's command of the English language, her use of an attorney to obtain her first divorce, and her knowledge of Peter's property interests, "she voluntarily and knowingly entered into the dissolution of marriage with [Peter]."

We reject the assumption that knowledge of the English language by itself imparts knowledge to a party of his or her marital property rights. A more realistic assumption is that there are many intelligent adults who assume that divorcing spouses are entitled only to those properties titled in their own names.[4] This latter assumption is essentially conceded by the master.[5]

We also reject the assumption that Carolina must have been aware of her marital property rights simply because she had been previously divorced. There is no evidence that she was advised of her marital property rights in her first divorce proceeding. She and her first husband separated and "divided" their property according to individual ownership two years before she consulted an attorney to obtain a dissolution just prior to her second marriage. When asked how much time she had spent consulting with this attorney, Carolina responded, "It was real quick. There was nothing to put down on the paper.... I went ahead and filled out the papers myself, and it just took about approximately two hours, I would say." These facts do not provide a sufficient basis from which to conclude that Carolina's prior divorce provided her with knowledge of her marital property rights.[6]

4. This was the law in common-law marital property states until the passage of equitable distribution statutes. *See* L. Golden, *Equitable Distribution of Property* § 1.03 (1983). Although Mississippi is now the only state without an equitable distribution statute, Freed & Walker, *Family Law in the Fifty States: An Overview,* 22 Fam.L.Q. 367, 392–401 (1989); *but see Reeves v. Reeves,* 410 So.2d 1300 (Miss.1982), Florida, New York, Pennsylvania, Tennessee, Virginia, and West Virginia were still "title theory" states as recently as 1978. Freed & Foster, *Divorce in the Fifty States: An Overview as of 1978,* 13 Fam.L.Q. 105, 116–17 (1979).

5. In support of his conclusion that the granting of all the marital assets to Peter was not "unjust," the master stated: "It is not unreasonable for a person in her position in 1984 to believe that the fruits of the other spouse's labor should remain with that spouse."

6. The master's conclusion is undermined by his own Finding of Fact No. 2, which states: "That action [her first divorce] gave [Carolina] some understanding about the divorce process, but since no property rights were adjudicated, no finding can be made now as to her understanding then concerning marital property division rights."

The master also concluded that Carolina's awareness of Peter's properties demonstrated an understanding of the consequences of her decision not to assert her marital property rights. We do not agree that mere knowledge of the existence of the other spouse's properties is equivalent to knowledge that the spouse may be entitled to some portion of those properties upon divorce.

Peter also argues that Carolina's parents had urged her to seek an attorney. Carolina admitted this, but testified that Peter had advised her "not [to] see a lawyer because [it would] cost [her] a lot of money." She also testified that she told her parents that she "did not go see a lawyer because Peter told me that I have no interest in the property, and I believed Peter." Although Carolina contacted her current attorney after friends told her that she "had an interest in the marital property," there is no evidence that she received this advice prior to signing the dissolution papers. Thus, the evidence does not support the conclusion that Carolina fully understood the consequences of signing the dissolution petition at the time she signed it.

Finally, Peter argues that the instructions which accompanied the dissolution forms "put Carolina ... on notice as to what her property rights were." However, there is no evidence that Carolina actually read and understood the instructions. Any implication by Peter that Carolina should have been aware of her rights because she was provided with these instructions is erroneous. Because AS 25.24.230(a)(1) requires a finding that the party signing a dissolution petition "understand fully the nature and consequences of their action," the relevant question is whether Carolina actually understood her rights, not whether she should have understood them.

We conclude that the superior court's finding (as incorporated from the master's report) that Carolina understood the consequences of her actions is clearly erroneous. We therefore vacate the property division portion of the dissolution petition.

## IV. DID THE MASTER CORRECTLY DESIGNATE WHICH PROPERTIES WERE SUBJECT TO DIVISION?

■ Because we hold that the property division portion of the dissolution agreement is invalid, it is unnecessary for us to review the superior court's decision that the property provision agreed to by the parties was not "grossly unfair, unjust, or inequitable" under AS 25.24.230(a)(2). Nor need we decide what portion of the marital assets and pre-coverture assets, if any, should be granted to Carolina. We do note, however, that the master's designation of the marital assets subject to division is erroneous insofar as it does not include assets acquired during the marriage.

■ In *Rose v. Rose*, 755 P.2d 1121 (Alaska 1988), we recently explained that, while a trial court has "broad discretion in determining a just disposition of property," it must first determine what property is available for distribution. *Id.* at 1123. The property subject to division "includes all assets acquired by the parties during the marriage, plus any premarital property which the 'balancing of equities' suggests should be divided." *Id.* However, the superior court has discretion whether or not to order a division of property acquired during the marriage if that property was acquired with *pre*-marital assets. *See Matson v. Lewis*, 755 P.2d 1126, 1128 (Alaska 1988).

The master therefore erred in reasoning that Peter's Anchorage four-plex should not have been considered marital property on the ground that he purchased it "by use of a $60,000.00 loan on [his] pre-marital house." If the accumulation of equity in the four-plex was derived from loan payments made out of marital assets, then the increase in the equity in the four-plex should be considered for purposes of property division. This follows from *Rose* and *Matson*.

Finally, to the extent that Peter purchased guns for his gun collection out of marital income, these guns should also be considered marital property. The master erred in concluding that the guns were not

subject to division because it was Peter who bought, sold, and traded them.

We express no opinion as to whether these properties are in fact marital assets because on the record before us we are unable to determine whether marital assets were used to purchase the guns and to make payments on the four-plex loan.

## V. ATTORNEY'S FEES.

■ Pursuant to Civil Rule 82, the superior court awarded Peter $6,107.25 in full attorney's fees, as recommended by the master. We reverse and remand the superior court's attorney's fee award on the basis that Peter is no longer the prevailing party. Contrary to Carolina's argument, the divorce exception to Civil Rule 82 does not apply to post-judgment motions involving only money and property issues. *See L.L.M. v. P.M.*, 754 P.2d 262, 263 (Alaska 1988); *O'Link v. O'Link*, 632 P.2d 225, 231–32 (Alaska 1981).

The superior court's order approving the property division portion of the parties' Petition for Dissolution and award of attorney's fees to Peter are REVERSED. The property division provisions of the decree are VACATED, and this case is REMANDED to the superior court for further proceedings consistent with this opinion.