ISHEE, J.,
for the Court.
¶ 1. The Appellant, Thomas J. Richardson (“Thomas”), filed his complaint for divorce from Sharon A. Richardson (“Sharon”) in the Chancery Court of the First Judicial District of Hinds County on December 6, 2001, citing irreconcilable differences. On February 24, 2004, the parties signed a consent to allow the court to decide the issues of child custody, child support, and the equitable distribution of marital assets. On May 5, 2004, the chancery court entered final judgment on those matters. Aggrieved by the decision of the chancery court, Thomas now appeals. We find the judgment of the chancery court is affirmed in part, and reversed and remanded in part.
FACTS
¶ 2. Sharon and Thomas Richardson were married on July 1, 1995. The couple had one child, Isaiah Richardson, born December 6, 1996. Prior to their marriage the parties entered into a prenuptial agreement that provided in pertinent part:
[Sjhould the parties eventually divorce ... each shall be entitled to only the property he or she brought into the marriage.... As to assets and properties acquired during the marriage the parties covenant and agree that should they divorce the marital property, real, property, and mixed shall be divided with Thomas J. Richardson taking 2/3 of such marital property and assets and Sharon Herring taking 1/3 of such marital property and assets.
The prenuptial agreement further provided that “Sharon Herring hereby relinquishes any claim upon Thomas J. Richardson’s logging business ... and shall have no claim on [his] logging business should a divorce action be instituted.” Thomas filed his complaint for divorce on December 6, 2001, citing irreconcilable differences. On February 24, 2004, the parties executed their mutual consent to permit the court to proceed to decide the issues of child custody, child support, and the division of marital assets acquired during the marriage.
¶ 3. A hearing was held on February 24, 2004. Other than the parties, no witnesses were called. On May 5, 2004, the court entered its judgment of divorce granting custody of Isaiah to Sharon. The chancery court also awarded Sharon nineteen of thirty-nine cows the couple was purported to have owned at a value established by the court to be $850 each. Furthermore, the chancellor awarded Sharon $11, 333 for a one-third interest in a thirty-four acre plot of timberland acquired by Thomas during the marriage. Aggrieved by this decision, Thomas asserts the following errors on appeal: (1) whether the trial court erred in failing to apply the Albright factors and in failing to award custody of Isaiah to Thomas; (2) whether the trial court erred by failing to apply the prenuptial agreement to the division of the cattle; (3) whether the trial court erred by dividing the timberland between the parties; and (4) whether the trial court incorrectly valued the real property in question and failed to apply the Ferguson factors for equitable division of the marital property.
*1081 ISSUES AND ANALYSIS
I. Whether the trial court erred in failing to apply the Albright factors and in failing to award custody of Isaiah to Thomas.
¶4. Thomas asserts on appeal that the trial court erred in granting custody of his son, Isaiah, to Sharon. The scope of review of a custody decree on appeal to this Court is limited. Ivy v. Ivy, 863 So.2d 1010, 1012(¶ 3) (2004). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002) (quoting Kilpatrick v. Kilpatrick, 732 So.2d 876, 880(¶ 13) (Miss.1999) (citations omitted)). Thomas correctly argues that Mississippi jurisprudence requires that the best interests of the child be the prime concern in determining who shall have custody of a child following the divorce. Dickerson v. Dickerson, 245 Miss. 370, 374-75, 148 So.2d 510, 512 (1963). In fact, the child’s best interests are the polestar consideration in custody matters. Carr v. Carr, 480 So.2d 1120, 1123 (Miss.1985). The Mississippi Supreme Court has set forth twelve factors to be considered by chancellors in determining the child’s best interests. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Thomas argues that had the court conducted even a cursory review of the Albright factors, the chancellor would have granted custody of Isaiah to him.
¶ 5. Sharon argues that while the Albright factors were not addressed by the chancellor specifically, both parties to the dispute provided testimony material to those factors. Sharon further argues that the trial court was relieved of its duty to make an Albright analysis due to Thomas’s own sworn pleadings. In his complaint, Thomas stated that “it would probably be in the best interest of the minor child that his custody be awarded to [Sharon] with reasonable and specific visitation awarded to [Thomas].” We cannot say that the chancellor committed reversible error by failing to specifically address the Albright factors. “Even where the specific basis of a decision is not stated in the chancellor’s opinion, the decision will not be disturbed if substantial evidence can be found in the record.” Sootin v. Sootin, 737 So.2d 1022, 1026(¶ 13) (Miss.Ct.App.1998) (citing M.C.M.J. v. C.E.J., 715 So.2d 774, 777(¶ 20) (Miss.1998)). The testimony provided at the custody hearing in favor of granting custody of Isaiah to Sharon as well as Thomas’s own pleadings provide the requisite substantial evidence to support the chancellor’s order. Finding no error, we affirm as to this issue.
II. Whether the trial court erred by failing to apply the prenuptial agreement to the division of the cattle.
¶ 6. Thomas next asserts that the trial court erred by failing to apply the plain terms of the prenuptial agreement to the division of the cattle owned by the Richardsons. Thomas further alleges that the chancellor erred by assigning a value of $850 per head without any evidence to substantiate that figure. Sharon asserts that Thomas essentially waived the provisions of the prenuptial agreement by signing the mutual consent to permit the court to proceed to the division of assets, such as the cattle, specifically stated within the agreement. In short, Sharon argues that Thomas’s signature on the consent motion allowed the chancellor to determine an equitable division of assets free and clear of any restrictions that may be imposed by the prenuptial agreement. Thomas coun *1082 ters that any equitable distribution must take into consideration the prenuptial agreement and the prior understandings of the parties.
¶ 7. We agree with Thomas’s position. His signature of the mutual consent was little more than his acquiescence to the distribution of the property by the chancery court. The contention that his signature on the agreement allowing the chancery court to proceed with such matters superceded or eviscerated the plain terms of the prenuptial agreement is untenable. We find that the chancery court committed manifest error by substituting its judgment for that of a valid and enforceable contractual agreement between the parties. The record reflects that the herd of cattle consisted of some thirty-nine animals. Therefore, according to the prenuptial agreement, Sharon is entitled to one-third of the value of the cows. Furthermore, the chancery court erred by assigning the seemingly arbitrary value of $850 to each head of cattle. We, therefore, reverse and remand this issue to the chancery court with instructions to determine a more concrete value for the individual cattle, and to then award Sharon cattle equal to one-third of the value of the herd, or if necessary, to direct that the herd be sold, and Sharon be awarded one-third of the proceeds of the sale.
III. Whether the trial court erred by dividing the timberland between the parties.
¶ 8. Thomas argues that the trial court erred by granting Sharon a one-third division of the thirty-four acres of timberland. In fact, the chancery court itself noted that the purchase of the property was “with the intent of not having it considered marital assets.” Without explanation, the chancellor stated that “that intent fails,” and awarded Sharon one-third of the purchase price of the property. The deed and correction deed relating to the thirty-four acres clearly show that the title to the land was to be in the name of Thomas’s logging company. The purchase of the land was made with money borrowed from a timber dealer, which was to be repaid with proceeds from the sale of timber from the land. The chancery court, in its bench opinion holding that Sharon was entitled to one-third of the land, stated:
In regard to the purchase of the ... 34 acres of land, this Court again finds credible that that property was acquired during the marriage, and it was purchased in this Court’s opinion with the intent of not having it considered marital assets, and this Court finds that that intent fails, and that Paragraph 2 of the Prenuptial Agreement would then be applicable, which directs and orders that if a divorce shall be had, that the property should be divided two-thirds/one-third. Given that testimony that the land was purchased at $34,000 for 34 acres, then it shall be divided two-thirds/one-third.
It is unclear to this Court whether the chancellor was suggesting that Thomas engaged in fraudulent concealment of the land or whether the chancellor was simply stating that the land was never intended to be marital property. Because of this lack of clarity, we reverse and remand as to this issue for more definitive findings.
IV. Whether the trial court incorrectly valued the real property in question and failed to apply the Ferguson factors for equitable division of marital property.
¶ 9. Thomas next argues that even if the chancery court was correct in awarding Sharon a portion of the land, the court erred by ordering him to pay Sharon one-third of the land’s purchase price, or $11,333, for her interest. Because, as stated above, we reverse and remand this case *1083 for more definitive findings concerning the division of the land, we decline to discuss this issue.
¶10. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. BRIDGES, P.J., NOT PARTICIPATING.