Robert G. Peden ("the husband") and Hazel (Penny) Dunn Peden ("the wife") were married in September 1995. Before the marriage, the parties executed an antenuptial agreement. According to the parties' handwritten financial statements appended to that agreement, the wife's net worth was approximately $10 million. The parties separated in June 2003. The wife moved for a summary judgment on most issues in the divorce action, arguing that they were governed by the parties' antenuptial agreement. The husband responded to the wife's motion by arguing that the agreement was ambiguous in certain respects; that, under the terms of the agreement as he read them, certain property was not solely the wife's; and that he was entitled to a constructive trust on the wife's personal property because it had been paid for by his separate property (i.e., his income from his medical practice and/or his disability checks). The trial court entered a summary judgment in favor of the wife, holding that the antenuptial agreement controlled the disposition of the parties' assets. After a short trial primarily concerning whether the husband should be responsible for the payment of two promissory notes that he had allegedly executed in favor of the wife, the trial court entered a judgment divorcing the parties, incorporating the antenuptial agreement, awarding the wife all the assets in her name, and making the husband responsible for all debts to the wife for which he had contracted.
The husband appealed that judgment, and this court dismissed the husband's appeal as being from a nonfinal judgment because the trial court had not definitively addressed whether the debts allegedly owed by the husband to the wife had been contracted for by the husband or whether they were in fact still owed. See Peden v. Peden, 931 So.2d 721
(Ala.Civ.App. 2005). Upon remand, the wife gave up any claim to the debts she had argued were owed to her, and the trial court entered a judgment reflecting that the debts were no longer an *Page 108 
issue; the original divorce judgment was then made final. The husband again appeals.
The husband's appeal requires us to interpret the parties' antenuptial agreement. That antenuptial agreement provides, in pertinent part, as follows:
 "ESTABLISHMENT OF SEPARATE PROPERTY "7. Except as otherwise provided in this agreement, the respective Property of each party owned by each party upon the date of execution of this agreement, together with any property that the party may have omitted inadvertently, together with all income and increases in value arising from that property during marriage regardless of the reason for the income or increase, and together with any property subsequently acquired and titled in the respective name of each party, whether before or after the marriage, shall be owned as the separate property of that party during marriage. All property that either party may acquire by way of gift or inheritance, whether under a Will or intestate distribution, is similarly the separate property of the owner-party.
 "Each party shall have the absolute and unrestricted right to manage, control, dispose of, or otherwise deal with his or her separate property free from any claim that may be made by the other by reason of their marriage and with the same effect as if no marriage had been consummated between them.
 "Each party hereby waives, discharges and releases all right, title and interest in and to the separate property that the other party now owns or acquires after the execution of this agreement, or acquires from the proceeds of any property now owned.
 "MARITAL PROPERTY "8. (a) During the course of the marriage, the Parties shall make periodic contributions to a jointly owned fund entitled the `Household Account' for the maintenance of their household and, potentially, for the purpose of marital investments. All property purchased with the proceeds of the Household Account shall be deemed Marital Property. Each party shall have equal rights in regard to the management of and disposition of all Marital Property.
 "(b) Notwithstanding any provision to the contrary contained herein, any and all household furniture, furnishings, accessories, art work, automobiles, jewelry, cash on hand, appliances, china, crystal, silver, or any other type or description of tangible personal property acquired by the parties prior to or during marriage shall be considered the sole and separate property of the wife regardless of how titled.
 "(c) Additionally, other than property which is acquired and denominated as Marital Property as described under the provisions of 8(a), above, all stocks, bonds, securities and any other instrument evidencing (showing) ownership or interest of any kind or nature acquired by the parties during the marriage shall be considered the sole and separate property of the wife regardless of how titled.
 "(d) Furthermore, notwithstanding anything contained in paragraph 7, above, any interest in the property located at 2415 Helton Drive, Florence, Alabama, owned by Husband shall be considered Marital Property."
During the marriage, the husband consented to the placement of most of his assets in the wife's sole name because, he said, she was concerned about the possibility *Page 109 
that those assets may be subject to seizure by the husband's ex-wife or other potential creditors. In addition, the husband allowed the wife to place his salary checks into an account maintained in her sole name. Although the parties opened a joint account after the husband began receiving disability checks in 2000, most of the funds in that account, including funds generated by the liquidation of the husband's $200,000 retirement account, were routinely transferred into an account maintained in the wife's sole name as well.
The husband, who had been a physician specializing in the treatment of the ear, nose, and throat (often referred to as an "ENT"), was prevented from practicing in his subspecialty — microscopic surgery — when he suffered what the parties refer to as a stroke that affected his left eye[1] in May 2000. Before that, the husband earned, on average, over $500,000 per year. The husband's disability insurance policy began paving him benefits of $15,000 per month, tax free, in October 2000. The wife was not employed and had no employment income. However, she was able to live comfortably on the interest and dividends earned by her significant assets.
The parties lived well, traveled, and purchased expensive jewelry and gold and silver coins. At the time of the divorce, however, neither party claimed to have possession of the gold and silver coins. The wife testified in her deposition and at trial that the husband's money had been dissipated on living expenses, trips, and expensive gifts; she answered many questions concerning the whereabouts of the funds or other assets contained in several accounts she had maintained during the marriage with the words "I don't know" or "I have no clue." The husband testified in his deposition that he was sure that his money had been used to purchase many assets that the wife titled in her sole name and claimed pursuant to the antenuptial agreement. However, he presented no documentary evidence indicating that his money had been used for any purchase.
The husband and another doctor, Dr. Walker, had formed a partnership called Peden Walker in order to purchase a building, referred to as the Helton Drive property by the parties, in which to house their respective medical practices. The husband owned a 52% interest in the partnership. The antenuptial agreement indicated that any interest the husband may have in the Helton Drive property would be considered as marital property. However, during the marriage, the wife paid off the mortgage on the property and a 52% interest in the property was deeded by the partnership to the wife, in her sole name. The husband disputes the wife's assertion that she paid the mortgage with her personal funds; instead, he contends that the money used to pay off the mortgage was from his income, which he had entrusted to her for safekeeping for the mutual benefit of the parties.
The husband argues that the antenuptial agreement is ambiguous because of what he perceives as a conflict between paragraph 7 and paragraph 8(b). According to the husband, paragraph 7 provides that each party is to retain their separate property and that any property acquired by a party and titled in their name is that party's separate property, provided that the property was purchased with that party's separate property. The husband maintains that any property purchased by *Page 110 
one party with commingled funds or with the separate property of the other party does not become the sole property of the purchasing party, regardless of how the property is titled. The wife, however, maintains that any property titled in her name and, specifically, any of the items enumerated in paragraph 8(b), are her separate property irrespective of whose funds financed the purchase.
To determine whether the antenuptial agreement is ambiguous, the trial court was required to review the agreement to determine if "`the intent of the parties c[ould] be fairly and reasonably gleaned from the four corners of the document.'"Stacey v. Saunders, 437 So.2d 1230, 1234 (Ala. 1983) (quoting Schmidt v. Ladner Constr. Co., 370 So.2d 970,972 (Ala. 1979)). The trial court's summary judgment in favor of the wife and its incorporation of the antenuptial agreement into the divorce judgment indicates that the trial court found the agreement to be unambiguous. We agree with that conclusion.
The interpretation of a provision in an antenuptial agreement, like the interpretation of any provision in any contract, is a question of law for the trial court. Laney v. Laney,833 So.2d 644, 646 (Ala.Civ.App. 2002). The trial court concluded that the effect of the antenuptial agreement was to make all personal property originally owned or later acquired by the parties, jointly or separately, the wife's separate property despite the indication in paragraph 7 that each party would retain his or her separate property. This construction is supported by the language of the agreement and appears to reflect the intent of the parties as gleaned from the agreement itself. Notably, paragraph 8(b) begins with the phrase "Notwithstanding any provision to the contrary contained herein," indicating that the provision might conflict with another provision in the agreement. Thus, paragraph 8(b) controls over another contrary provision insofar as the enumerated personal property is concerned. Thus, the trial court's judgment insofar as it concluded that the antenuptial agreement was unambiguous and should be enforced according to it terms is affirmed.
The husband also argues that the trial court erred in determining that the wife was entitled to a summary judgment declaring that the Helton Drive property is her sole property under the antenuptial agreement. He contends that the property was marital property under the antenuptial agreement and that the wife failed to establish that the 52% interest in the Helton Drive property was converted to her sole property because, he alleges, she did not present sufficient evidence indicating that the mortgage on the Helton Drive property was satisfied with her personal funds. The wife argues that the husband never had an interest in the Helton Drive property because it was owned by the partnership, Peden Walker.See Ala. Code 1975, § 10-8A-203 (providing that "[p]roperty acquired by a partnership is property of the partnership and not of the partners individually"). She further argues that the plain language of the antenuptial agreement does not require that the assets titled in her name be purchased with her personal funds or separate property before they are considered her sole property. We agree with the wife on both counts.
The deed to the wife from the partnership indicates that the Helton Drive property was indeed owned by the partnership and not by the husband and Dr. Walker as individuals. Under §10-8A-203, the husband, as a partner, had no individual interest in the Helton Drive property. Because the husband had no interest in the property, *Page 111 
the Helton Drive property never became marital property. In addition, as noted above, we agree with the wife that paragraph 7, contrary to the husband's argument, simply does not contain a requirement that the property acquired by a spouse after the execution of the agreement and titled in that spouse's sole name must be purchased with that spouse's separate funds in order for the property to be considered the separate property of the purchasing spouse. Thus, the interest in the Helton Drive property, which was deeded in the wife's sole name, is her separate property under the agreement.
The final argument asserted by the husband is that he was entitled to a constructive trust on the wife's assets because he had not transferred his assets to her to be her separate property but, instead, had allowed the wife control over his separate property for the mutual benefit of the parties. This creative argument is, however, unavailing. The husband correctly explains that a constructive trust may "`be imposed upon property whenever the circumstances under which it was acquired make it inequitable that it should be retained by the holder of legal title provided some confidential relationship exists. . . .'" Herston v. Austin, 603 So.2d 976, 979
(Ma.1992) (quoting Cole v. Adkins, 358 So.2d 447, 450
(Ala. 1978)). We also agree that the husband presented sufficient evidence to overcome the wife's summary-judgment motion as to the intent of the parties concerning the wife's control of the husband's money for the benefit of both parties.See Putnam v. Putnam, 274 Ala. 472, 475-76,150 So.2d 209, 213 (1963) (quoting 26 Am.Jur. Husband andWife, § 102, at 729) (noting that a constructive trust in favor of a husband may arise when a wife uses the husband's income to "`purchase property with the understanding that it is to be for the benefit of both of them'").
However, the husband's failure to adequately prove that specific items of property were purchased with his separate property (i.e., his salary or funds from his disability payments) is fatal to his constructive-trust claim. "[T]o enforce a constructive trust there must have been a tangible form of identifiable property which was received as consideration for the sale of trust property or into which it may be otherwise traced and identified." Ex parteMorton, 261 Ala. 581, 593, 75 So.2d 500, 512 (1954). The husband has not definitively traced the wife's expenditures of what he claims to have been his separate property into any particular assets; thus, he has not established a "tangible form of identifiable property" upon which a constructive trust in his favor could be imposed. Therefore, we conclude that the trial court did not err by entering a summary judgment in favor of the wife on the husband's constructive-trust claim.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
[1] The husband testified at trial that he had been diagnosed with ischemic optic neuropathy.